UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| KENNETH MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:20-cv-00003-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHARTER COMMUNICATIONS, | ) | **&** |
| LLC, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Defendant Charter Communications, LLC's Motion for Summary Judgment [R. 9.]  In December 2019, Plaintiff Kenneth Morris filed suit against Charter alleging that Charter's installation of cable wires on his property constitutes unlawful trespass, a violation of his right to the quiet enjoyment of his property, and a violation of multiple Kentucky statutes which allegedly provide him a private cause of action.  [R. 1-1 at 6.] In response, Charter moves for summary judgment, arguing that the Cable Act of 1984 shields it from liability, the statute of limitations has run on Mr. Morris's claims, and that it holds a prescriptive easement over the property in dispute.  [R. 9-1.]  The Court, having reviewed the record and for the reasons set forth herein, will **GRANT** Charter's Motion for Summary Judgment [R. 9.]

**I**

Mr. Morris acquired his property in Trimble County, Kentucky in 1995. [R. 2.] At some point prior to 1997, Shelby Energy acquired a permanent easement to maintain and operate power lines strung across and over Mr. Morris's property.[1] [R. 1-1 at 4.] To support the power lines, two utility poles were installed within the bounds of the easement. *Id.* Mr. Morris was aware of Shelby Energy's easement when he purchased his property. [R. 16 at 2.] In 2001, Charter "piggy backed" on this easement and used Shelby Energy's poles to string its cable lines across Mr. Morris's property. *Id.* Mr. Morris alleges that neither Charter, nor its predecessor, ever told him of its plans to use the easement. *Id.* He also states that Charter did not compensate him for its use of the easement. *Id.* Although Mr. Morris indicates that he noticed the lines being installed in 2001, he alleges that he "was led to believe [by the workers] it was Shelby Energy stringing different or new lines across the easement," not that Charter was installing cable lines. [R. 16 at 3.] In 2016, however, another company requested use of Mr. Morris's easement. *Id.* During the negotiation process with this company, Mr. Morris, allegedly for the first time, became aware that Charter's lines were installed on his easement. *Id.* Mr. Morris states that he soon contacted Charter "a number of times by phone to object and complain that it was trespassing and got nowhere." *Id.* at 4. He states that he ultimately wrote a letter, dated December 20, 2017, asking Charter to remove its cables. *Id.* When Charter refused to do so, the current litigation ensued. *Id.* Charter now moves for summary judgment. [R. 9-1.]

---

[1] In her Declaration in Support of Charter's Motion for Summary Judgment [R. 10.], Charter's manager of legal services, Christine M. Flores, provides copies of two Right-of-Way easements entered into by Morris's predecessors in interest and Shelby Energy. These agreements, dated November 5, 1945 and January 6, 1955, "allow Shelby Energy to transmit energy through utility poles on the Morris Property." [R. 10 at 5-6.] A subsequent agreement, dated March 27, 1980, allowed for a pole attachment for television antenna services. [R. 10-3.]

## II

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

**A**

The Court first turns to Charter's argument that summary judgment must be granted because the statute of limitations has run on Mr. Morris's claims. [R. 9-1 at 12.] Mr. Morris's Complaint contains three causes of action for property damage[2]. [R. 1-1 at 6.] Kentucky law establishes a five-year statute of limitations for property damage claims. *See* KRS § 413.120. While Charter does not state an exact date that it believes the statute of limitations began to run, it states "Morris must have known of the facts forming the basis for the allegation at least by September 2001, the date Charter installed fiber optic and other cable on Shelby Energy's poles." [R. 9-1 at 12.] Charter alleges that, because Morris did not bring his property claims by September 2006, his claims are time barred. *Id.*

In response, Mr. Morris argues that Charter has not provided proof of the date Mr. Morris became aware that Charter had attached its cables on his easement, thereby causing the statute of limitations to run. *Id.* Additionally, Mr. Morris discusses at length Kentucky case law which he alleges permits him to maintain a cause of action for damages dating back at least five years from the date of filing of the lawsuit because the trespass is "ongoing." *Id.* at 10. The Court need not analyze whether the time periods are severable because summary judgment is inappropriate on this ground. The Kentucky Supreme Court has indicated that "[a]n injured party has an affirmative duty to use diligence in discovering the cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of this entire claim." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 64 (Ky. 2010) (quoting *Hazel v. General Motors Corp.*, 863 F. Supp. 435, 440 (Ky. W.D 1994). If a party's concealment or false

---

[2] Morris alleges that Charter's installation of cable wires on his property constitutes an unlawful trespass, a violation of his right to the quiet enjoyment of his property, and a violation of multiple Kentucky statutes which allegedly provide him a private cause of action. [R. 1-1 at 6.]

4


representations prevent actual knowledge, however, equitable tolling of the statute of limitations might be applicable. *See Fluke*, 306 S.W.3d at 67. Here, Mr. Morris alleges that, in 2001, he was told Charter's employees were laying lines on behalf of Shelby Energy. [R. 16 at 3.] This statement, if true, indicates the potential presence of concealment on Charter's behalf. Thus, because genuine issues of material fact exist regarding when the statute of limitations began to run and whether equitable tolling applies, summary judgment is inappropriate on statute of limitations grounds.

### B

Next, Charter argues that it holds a prescriptive easement on the area of Mr. Morris's land where its cables are placed. [R. 9-1 at 12-15.] "As with adverse possession of a fee simple estate, a prescriptive easement can be acquired by actual, hostile, open and notorious, exclusive, and continuous possession of the property for the statutory period of fifteen years." *Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.*, 15 S.W.3d 727 (Ky. 2000). Charter argues that because it holds a prescriptive easement on the disputed portion of land, Mr. Morris cannot bring trespass and property damage claims against it. [R. 9-1 at 12-15.] In response, Mr. Morris argues that no prescriptive easement exists because Charter's possession of his land was neither open and notorious nor continuous.[3]

Regarding the continuous element, Mr. Morris argues that his alleged phone calls and letter[4] to Charter created an interruption of Charter's continuity on his land. [R. 16 at 14-17.] In support, Morris cites to *Allen v. Thomas*, 209 S.W.3d 475 (Ky. Ct App. 2006). In *Allen*, the

---

[3] Although Morris makes clear that he is challenging the "open and notorious" element, the Court surmises that he is also challenging the "continuous" element based on his case citations and discussion.
[4] Because no discovery has occurred in this case, it is unclear whether these phone calls occurred prior to September 2016, when the fifteen-year prescriptive period possibly would have ended. Mr. Morris's letter, however, is dated December 20, 2017. [R. 18 at 8.]

Kentucky Court of Appeals adopted the principle that "actions are sufficient to interrupt the prescriptive period when the servient landowner engages in overt acts, such as erecting physical barriers, which cause a discontinuance of the dominant landowner's use of the land, no matter how brief." *Allen*, 209 S.W.3d 475 at 481. The Court of Appeals also stated, "we find that clear conduct indicating that a property owner is not acquiescing as to a prospective easement owner's claim of right should rightfully be considered as ending the running of a prescriptive period." *Id.* Charter argues that Mr. Morris's alleged phone calls and letter were not sufficient to interrupt its period of continuity. [R. 18 at 8-9.] Thus, because there exists a genuine issue of material fact as to whether Mr. Morris's actions severed Charter's period of continuity, summary judgment is inappropriate on this ground.

Moreover, regarding the open and notorious element, Mr. Morris refers the Court again to his statement that, in 2001, he was allegedly led to believe that it was not Charter installing lines on his property, but Shelby Energy. [R. 16 at 3.] Although Charter states that its use was open and notorious since it has "not taken any steps to conceal its use of the Morris Property from Morris," the Kentucky Supreme Court has indicated that open and notorious possession must be "conspicuous and not secret, so that the legal title holder has notice of the adverse use." [R. 9-1 at 14; *Appalachian Reg'l Healthcare, Inc. v. Royal Crown Bottling Co.*, 824 S.W.2d. 878, 880 (Ky. 1992). Here, there is a genuine dispute of material fact regarding whether Charter hid the nature of its installation from Mr. Morris and convinced him that they were installing lines on behalf of Shelby Energy. [R. 16 at 3.] Thus, summary judgment is also inappropriate for this reason.

C

Finally, the Court turns to Charter's argument that the Cable Communications Policy Act of 1984, 47 U.S.C. § 51 ("Cable Act") shields it from liability. [R. 9-1 at 4-12.] The Cable Act was enacted by Congress "to establish franchise procedures and standards which encourage the growth and development of cable systems," and "minimize unnecessary regulation that would impose an undue economic burden on cable systems." 47 U.S.C. § 521(2); 47 U.S.C. § 521(6). "To advance these objectives, [§ 541(a)(2)] of the Cable Act authorizes a cable operator to construct 'a cable system over public rights-of-way . . . through easements . . . which have been dedicated for compatible uses.'" [R. 9-1 at 4.] In a 1984 Committee on Energy and Commerce House Report, Congress stated that this authorization includes "an easement or right-of-way dedicated for electric, gas, or other utility transmission." H.R. Rep. No. 934, 98th Cong., 2d Sess. 59, at 59 (1984). Charter alleges that this use is to be done "without having to obtain any additional permission from the original grantor of the easement for the privilege." *Id.* In its Motion, Charter first argues at length that Shelby Energy's Right-of-Way Easement is "dedicated for utility purposes compatible with Charter's use of the easement" and is thereby covered under the Cable Act. [R. 9-1 at 5-7.] Because Mr. Morris does not dispute that Charter "would ordinarily have a right to 'piggy-back' on the easement of another," the Court need not analyze Charter's arguments on this matter. [R. 16 at 7.]

Instead, the Court turns to Mr. Morris's argument that Charter cannot shield itself from liability under the Cable Act because it failed to provide him compensation for its use of the easement. [R. 16 at 6-8.] Section 541(a)(2)(C) of the Cable Act states as follows:

> (C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

7

47 U.S.C. § 541(a)(2). Morris argues that, under this section of the Cable Act, Charter was required to compensate him for its use of the easement. [R. 16 at 7.] He states, "missing from Charter's analysis is the fact that it cannot attempt to seek the safe harbor of the rights afforded it under the statute to shield itself from liability, yet fail to comply with the obligations imposed on it thereunder." *Id.* Because his argument is unclear and he does not allege any physical damage to his property, the Court surmises that Mr. Morris believes Charter was required to compensate him under a constitutional Takings Clause theory. Additionally, Mr. Morris also argues that, because Charter only cites to persuasive decisions from outside the Sixth Circuit, its argument that the Cable Act shields it from liability must fail. [R. 16 at 7-8.]

In response, Charter argues that Mr. Morris cannot allege that he was not properly compensated because he does not allege any damage to his property during the "installation, construction, operation, or removal" of the cables. [R. 18 at 5.] Charter also alleges that, if § 541(a)(2)(C) is to be interpreted as a provision requiring compensation under the Takings Clause of the Fifth and Fourteenth Amendments, Mr. Morris's argument still fails because he does not allege that Charter's lines materially increase the burden on his property. [*See* R. 18 at 4-5.] Finally, Charter argues that the "reasoning underlying the decisions" in the non-binding cases it cites should be considered by this Court. [R. 18 at 5.]

The Court agrees with Charter. First, Mr. Morris does not allege any physical damage to his property caused by "the installation, construction, operation, or removal" of Charter's cables. Therefore, it appears that his argument that Charter is required to pay him for its use of the easement on his land is rooted in takings theory. However, determining whether Section 541(a)(2)(C) of the Cable Act requires just compensation for damages under the Takings Clause

has not been decided by the Sixth Circuit[5] and Mr. Morris has not litigated this issue thoroughly. The Court will not litigate it on his behalf. Furthermore, the Court need not decide this issue because Mr. Morris fails to sufficiently allege that a taking has occurred on his property in the first place. Under general property law principles, an easement's burden cannot be "materially increased." If the burden is materially increased, a taking may have occurred. *See Johnson v. APJ Props., LLC*, 729 Fed. Appx. 401, 405 (6th Cir. 2018) (interpreting Michigan property law); *Sherwood v. TVA*, 590 Fed. Appx. 451, 461-62 (6th Cir. 2014) (interpreting Tennessee property law); *West v. Louisville Gas & Elec. Co.*, 2018 U.S. Dist. LEXIS 2832 at *16 (S.D. Ind. January 8, 2018) ("the court finds that no taking has occurred because Plaintiff has failed to allege that Insight's use materially burdens Plaintiff's property.")

Here, Mr. Morris does not allege that the burden on the already-existing easement was materially increased by Charter's installation of cables. In fact, Mr. Morris indicates that the cables have had essentially no impact on his land aside from their presence. Mr. Morris states "[t]ruth be told, there are no trees on the Property that interfere with the poles or lines, so once these lines are installed across the poles on my Property, I virtually never see anyone on the Property tending to or 'servicing' the lines." [R. 16 at 3.] Thus, Mr. Morris acknowledges that

---

[5] The United States District Court for the Western District of Michigan, however, has indicated that "when Section [541(a)(2)] is read in its entirety, it becomes apparent that Congress intended to grant cable operators the right to use easements which have been dedicated for compatible uses and establish a scheme that provides just compensation to the property owner for that use." *United Cable Television v. Louis J. Eyde Ltd. Family Partnership*, 1989 U.S. Dist. LEXIS 18154 at *11 (W.D. Mich. November 20, 1989). While this decision is not binding and does not analyze whether a material burdening of a party's property is required to demonstrate a taking, the Court does not foreclose the possibly of analysis in future cases. Nonetheless, Mr. Morris does not sufficiently litigate this argument.
  Moreover, the Sixth Circuit has not indicated whether Section 541(a)(2) requires payment for the use of "private" easements. While most litigation appears to be centered around whether private easements can be accessed by cable companies, *United Cable Television* indicates that Section 541(a)(2) allows for cable companies to use both public and private easements. *United Cable Television v. Louis J. Eyde Ltd. Family Partnership*, 1989 U.S. Dist. LEXIS 18154 at *7 -*9 (W.D. Mich. November 20, 1989). While this decision is not binding and the Court does not foreclose the possibly of analysis in future cases, Mr. Morris does not litigate this argument nor claim that his easement is not public.

he never sees anyone on his land tending to the lines and does not allege any physical damage or change to his land that is not simply de minimis. Ultimately, because Mr. Morris neither alleges damages "caused by the installation, construction, operation, or removal of such facilities by the cable operator" nor properly alleges damages under a takings theory, his argument that Charter cannot rely on the Cable Act to shield itself from liability is meritless.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby ordered that Charter's Motion for Summary Judgment [R. 9] is **GRANTED**. The case will be **STRICKEN** from the record, and an appropriate judgment will be entered contemporaneously herewith.

This the 17th day of February, 2021.

Gregory F. Van Tatenhove
United States District Judge